United States Court of Appeal
For the First Circuit

| | |
|---|---|
| John Doe, )<br>　　　　)<br>　　Plaintiff-Appellant, )<br>v. 　　　　　　　　　　　　)　　No. 25-1196<br>　　　　)<br>Sara Smith, 　　　　　　　)<br>　　　　)<br>　　Defendant-Appellee. )| |

**Appellee's Motion to Dismiss Appeal**

Under First Circuit Rule 27.0, Defendant-Appellee Sara Smith moves to dismiss this interlocutory appeal because there is no final judgment and this appeal does not satisfy any exception to the final judgment rule. At bottom, this is an appeal from a garden-variety discovery order in an on-going civil matter.

## Background

In November 2023, Plaintiff-Appellant John Doe sued Smith, alleging that she had violated a non-disclosure agreement (NDA). ECF 1 (Compl.). Doe was granted permission for "Doe" and "Smith" to proceed using pseudonyms. ECF 6.

In the original, operative, complaint, Doe alleges that he had Smith enter into an NDA to keep the public and media from learning about Doe's $1.3 billion lottery win. *See* Compl. ¶¶ 5, 7; *cf.* ECF 117 (Order denying Doe's motion to amend complaint). Doe's complaint alleges that Smith breached the NDA in only one respect: "Upon information and belief, Defendant has disclosed Protected Subject

Matter in one or more telephone communications with John Doe's father and stepmother." Compl. ¶ 17. Smith vehemently disputed this allegation from the outset, and accused Doe of leveraging his wealth and this litigation to obtain concessions from Smith in on-going family court litigation concerning their daughter. *See also* ECF 75-1, ¶ 19 (Doe's sworn declaration that "I made the mistake of telling my father that I had won the lottery without having him sign a confidentiality agreement." ). To date, there are over 200 docket entries in the district court litigation in which no dispositive motions have been filed, no trial has been held, and discovery has been limited to one set of written discovery requests.

The order being challenged on appeal provides a comprehensive history of the on-going discovery issues in this matter. *See* ECF 177, 1–6 (Discovery Order). For present purposes, the key landmarks include the following. In several discovery disputes, the magistrate judge ruled that depositions would not proceed immediately or would not proceed until after disputes over written discovery were resolved. *See id*. 3–4 (citing ECF 30, 123, 128).

Meanwhile, Smith sought a ruling requiring Doe to supplement his written discovery, noting in a joint status report:

> Defendant claimed that, in response to her request for production, the Plaintiff "has produced one document in addition to three documents previously produced that [Defendant] already had," and raised further issue with the Plaintiff's answers to Defendant's interrogatories numbers 1-4 and the Plaintiff's responses to the Defendant's requests for production numbers 1-4 and 6-9.

2

Discovery Order 4 (brackets added and quoting ECF 130). The magistrate judge "ordered the Plaintiff to fully respond or clarify his answers to the Defendant's Interrogatories Numbers 1-4 and the Defendant's Production Requests Numbers 1-4, 6, and 8-9, as narrowed or otherwise modified by the Magistrate Judge on the record." Discovery Order 6 (citing ECF 149, 150). Additionally, the magistrate judge directed the parties to confer concerning Doe's response to Document Request No. 7; directed Smith to supplement one of her document responses; and directed the parties to submit a further status report. Discovery Order 6.

Doe did not supplement his discovery responses, but instead filed a "partial" objection to the magistrate judge's ruling. ECF 162 (Doe Objection); *cf.* Discovery Order 5 n.1 (explaining that the partial objection was originally filed under seal). Doe describes his objection to the magistrate judge's ruling using familiar, boilerplate, discovery grounds:

> For the reasons set forth below, said portion of the Order should be modified or set aside as clearly erroneous or contrary to law because: (1) it improperly compels Plaintiff to produce information that is irrelevant, grossly overbroad, not proportional to the needs of the case, and far beyond the permissible scope of Fed. R. Civ. P. 26(b)(1), while acknowledging that *in camera* review of documents for relevance may be appropriate; (2) it unfairly and ironically requires Plaintiff to provide Defendant with more confidential information in order to remedy Defendant's unlawful disclosure of the confidential information she already has; and (3) it improperly interferes with the sequence of Plaintiff's discovery by prohibiting Plaintiff from taking depositions pending Plaintiff's production of information that is not relevant to

those depositions and is far beyond the permissible scope of Fed. R. Civ. P. 26(b)(1).

Doe Objection 2–3.

In its January 28, 2025, Discovery Order, the district court carefully considered and rejected each of Doe's objections to each aspect of the magistrate judge's ruling, and thus affirmed the ruling as neither clearly erroneous nor contrary to law. *See* Discovery Order 22–34. Because Doe did not comply with the Discovery Order, Smith filed a motion to enforce that order on February 11, 2025. ECF 180. After Smith filed her motion to enforce, Doe filed this interlocutory appeal of the Discovery Order on February 25, 2025. ECF 184.

Against this thumbnail description, we turn to our argument to dismiss this interlocutory appeal.

## Argument

"Ordinarily, litigants may not seek immediate appeal of discovery orders because they are not final decisions and orders of the district court." *Gill v. Gulfstream Park Racing Ass'n, Inc.,* 399 F.3d 391, 397 (1st Cir. 2005) (citation omitted). Because "claims that revealing information will cause irreparable harm can be made as to many types of material, … the circuits have regularly denied interlocutory appeals in which litigants sought to challenge discovery orders governing what information needs to be disclosed and to whom." *Awuah v. Coverall, N.A., Inc.*, 585 F.3d 479, 481 (1st Cir. 2009) (ellipsis added) (dismissing

4

interlocutory appeal concerning disclosure of trade secrets). "This is the settled rule in this circuit." *Id.*; *see also id.* at 483 ("Many cases in other circuits disallow immediate appeals of discovery orders that govern what information needs to be disclosed and to whom.") (collecting cases). Doe does not—and cannot—dispute that the Supreme Court has stated unequivocally that "we have generally denied review of pretrial discovery orders." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (citations omitted) (affirming dismissal of appeal of discovery order that affects attorney-client privilege); *but see* ECF 183, 3–4 (Doe relying instead on district court decision in *Mohawk*).

Undaunted, in his notice of appeal, "Plaintiff submits that the First Circuit should assume jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine." ECF 184. Neither ground is tenable. *See Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 124 (1st Cir. 2024) ("Our case law makes clear that discovery orders are not normally reviewable as collateral orders.") (citation omitted).

Section 1291 only provides this Court with jurisdiction over "final decisions of the district courts." Whatever else may be said about the Discovery Order, it assuredly is not a final decision of the district court.

That leaves the collateral order exception to the final judgment rule. Doe cannot satisfy the standard of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949), and its progeny. In this Circuit, *Cohen*

> allows interlocutory appeal of orders that decide issues that meet all four of these criteria: they (1) are distinct from the merits, (2) are definitive as to the issues sought to be reviewed, (3) affect interests that could not be vindicated by appeal after a final judgment, and (4) present an important issue meriting immediate review.

*Awuah*, 585 F.3d at 480 (citing *Gill*, 399 F.3d at 398). Doe cannot satisfy any, much less all, of these four criteria.

*First*, the issues in the Discovery Order were found by the district court to be intertwined with the merits of this case. *See* Discovery Order 22–34. Interrogatory No. 1 sought the identities of persons who would support Doe's claims, and an explanation how they would support his claims. *Id*. at 22–23. Interrogatory No. 2 sought the identities other people Doe told about his lottery winnings, which was found to be "relevant to the basic claims" and relevant to Doe's affirmative defenses, including "waiver, estoppel, and unclean hands." *Id*. at 24. Interrogatory No. 3 sought the identities of others who executed an NDA, which was found to be relevant for the same reasons. *Id*. at 25.

Document Request No. 2 sought copies of all NDAs, which was found to be relevant for the same reasons. *Id*. at 26. Document Requests Nos. 4 and 6 sought documents relating to the so-called "security" being provided, which was found to

be a "core issue" on the issue of consideration for the NDA and Smith's affirmative defenses. *Id.* at 27–28. Document Request No. 7 sought information about the corporate entity holding the winning lottery ticket, which was narrowed and the district court "reminds Mr. Doe that the Magistrate Judge's order includes the invitation for the parties to return to the Magistrate Judge if the dispute continues." *Id.* at 29. Document Request No. 8 sought contracts or agreements between Doe and his girlfriend, who he sometimes claims was the co-winner of the lottery, which was found to be "highly relevant." *Id.* at 30. Document Request No. 9 sought information relating to Doe's lottery winnings and the like provided to persons who did not execute an NDA, which was found to be relevant to Smith's affirmative defenses. *Id.* at 31–32.

Finally, in this regard, Doe challenged the magistrate judge's discretionary decision concerning the sequencing of depositions, which the district court agreed was based on a "special and good reason." *Id.* at 33. In other words, for the three challenged interrogatories, for the six challenged document requests, and for the sequencing of depositions, the district court found that they all were relevant to the merits of the case and appropriate in the context of this litigation. These handful of discovery issues are not distinct from the merits of the case.

*Second*, the Discovery Order is not definitive as to the issues sought to be reviewed. In some cases, the district court expressly invited the parties to return to

7

the court if disputes persisted. Even when not expressly stated, discovery orders ordinarily are not appealable as collateral orders because discovery rulings are routinely revisited over the course of litigation:

> Further, in the course of a single case, discovery-related orders are often numerous and often close calls. Yet they are rarely overturned on appeal, because review is normally for abuse of discretion; typically such orders involve balancing conflicting interests and depend on the trial judge's hard-won familiarity with the course of proceedings. The benefits of routinely allowing such appeals are judged not to outweigh the unquestionable costs.

*Awuah*, 585 F.3d at 481 (citations omitted); *accord Mohawk*, 558 U.S. at 106–107 ("[T]he district judge can better exercise [his or her] responsibility [to police the prejudgment tactics of litigants] if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings.") (brackets added by Court and quoting *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 436 (1985)). Because Doe has not complied at all with the Discovery Order, it is entirely speculative to guess the extent the district court will enforce its order or enter additional discovery orders that may amplify, alter, or confine the challenged Discovery Order.

*Third*, the Discovery Order does not affect interests that could not be vindicated by appeal after a final judgment. Doe claims that the Discovery Order "unfairly and ironically requires Plaintiff to provide Defendant with more confidential information" even though she supposedly violated the NDA. Doe Objection 2. Even setting aside the fact that Doe admitted under oath that he was the

one who disclosed his lottery win to his father (which also was confirmed under oath by his father, ECF 77-1, ¶¶ 3–5; ECF 97-1, ¶¶ 4–6), that is scarcely a reason to refuse to provide relevant discovery. Moreover, the district court previously entered a Confidentiality Order that not only allowed parties to mark information confidential, but allowed parties to mark highly confidential information as "attorneys' eyes only." *See* ECF 70. Suffice it to say, the district court could enforce the requirements in the Confidentiality Order that the information only be disclosed to appropriate persons for use in this litigation in accordance with the terms of the order.

Beyond the Confidentiality Order mechanisms already in place, Doe's interests could be vindicated by an appeal of the Discovery Order following a final judgment:

> Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

*Mohawk*, 558 U.S. at 105–106.

Although Doe does not want to wait to challenge the Discovery Order, that, of course, is not the standard. As the *Mohawk* Court made plain, Doe could attempt to obtain review in other ways. He could seek permission to take an interlocutory appeal under 28 U.S.C. § 1292(b). *See Mohawk*, 558 U.S. at 110. He could seek a writ of mandamus. *See id.* at 111. He could "defy a disclosure order and incur court-

9

imposed sanctions," and then appeal post-judgment once his claim has been struck without disclosing the court-ordered discovery, or appeal immediately if the sanctions amount to criminal contempt. *Id.*

Whether Doe can satisfy the criteria for these alternatives (spoiler alert—he cannot) is of no moment. *See id.* at 112 ("That a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are only imperfectly reparable does not justify making all such orders immediately appealable as of right under § 1291.") (citation omitted). The short answer is that between the Confidentiality Order and numerous other alternatives available to worthy appellants, Doe does not need a right to take an immediate appeal from a run-of-the-mill discovery ruling to be able to vindicate his interest in challenging the Discovery Order.

*Fourth*, the Discovery Order does not present an important issue meriting immediate review. "Turning then to the importance criterion, cases deemed to qualify usually present a disputable *legal* issue whose importance turns on the likelihood that it will arise in other cases." *Awuah*, 585 F.3d at 482 (emphasis added by court). Like most discovery disputes, the Discovery Order turns on the court's discretionary and fact-bound determinations balancing the relevance and need for certain information against the claimed burden and alleged confidentiality implicated by such disclosure.

> There is no "legal" issue presented by the merits of the discovery order in this case. The district court's decisions on virtually all of the disputed passages involved routine judgments about the likelihood that competitive harm will be done by disclosures about particular aspects of Coverall's business operations. It would be hard to think of more fact-bound controversies or ones more likely to turn on largely speculative judgments about a business with which the district court is now familiar as a result of managing the case and its extensive review of the disclosure issues. Coverall does not even attempt to frame an abstract legal issue for our review.

*Id*. So, too, here.

In sum, Doe cannot satisfy *any* of the four criteria under *Cohen* to take a collateral order appeal of the Discovery Order. Because Doe must satisfy *all* four criteria under *Cohen*, that is the end of the line.

## Conclusion

Defendant-Appellee Sara Smith respectfully requests that the Court dismiss this interlocutory appeal.

Dated: March 14, 2025               Respectfully submitted,

/s/Peter J. Brann
Daniel N. Nuzzi
Peter J. Brann
Hannah L. Wurgaft
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME  04243-3070
(207) 786-3566
pbrann@brannlaw.com
danuzzi@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant-Appellee*

11

## Certificate of Compliance

This motion uses 14-point Times New Roman typeface and contains 2535 words.

<u>/s/Peter J. Brann</u>
Peter J. Brann

**Certificate of Service**

On March 14, 2025, this document was served through the ECF system on all counsel of record in this matter.

/s/Peter J. Brann
Peter J. Brann